## Jacob Schack v. Edward B. McKey, Trustee.

1. EQUITY PRACTICE—*Appointment of Receivers Where the Complainant's Bill Shows He Has a Remedy at Law.*—Where it appears conclusively from the allegations of the complainant's bill that he has a full, complete and adequate remedy at law there can be no necessity for an order appointing a receiver and turning over to him personal property to which another claims title by right of purchase and payment, and of which he is in possession, without giving him an opportunity to establish his claim.

Schack v. McKey.

2. COURTS OF EQUITY—*Not Justified in Arbitrarily Taking the Possession of Property from One Holding It Under Claim of Title.*—A court of equity is not justified in arbitrarily taking the possession of property from one holding it under a claim of valid title, merely because another disputes his claim.

3. RECEIVERS—*Power to Appoint, One of the Most Important Prerogatives of Equity.*—The power to appoint a receiver and put him in possession of another's property is one of the most important prerogatives of equity, and is to be exercised only when it is clear there is no other adequate means of doing justice between the parties and preventing the accomplishment of a wrong.

**Interlocutory Order Appointing a Receiver.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed. Opinion filed February 21, 1902.

**Statement.**—This is an appeal from an interlocutory order appointing a receiver. January 4, 1901, complainant below (appellee) filed his bill in the Circuit Court of Cook County against Jacob Schack, appellant, as sole defendant. Appellant filed a sworn answer to the bill. To support the allegations of the bill certain affidavits made by complainant's solicitors were filed and considered upon the motion for the appointment of a receiver. Upon the record as made, appellee asked for the appointment of a receiver for certain property then in the possession of appellant. January 15, 1901, the motion was granted and the court ordered that " Edward B. McKey be and he is hereby appointed receiver of all the property and assets mentioned and described in said bill of complaint, and now in the possession of said defendant, and lately acquired by him from said Abraham Meyer under alleged bills of sale executed on November 15, 1900; and said defendant is hereby ordered and directed to forthwith surrender and deliver to said receiver so appointed, all of said property and assets so delivered to him as aforesaid by said Abraham Meyer, and said receiver is hereby authorized and directed to forthwith take possession of the same and hold the same until further order of the court in the premises."

To reverse this order appellant perfected his appeal to this court, and upon the hearing we held " there was plain

error in appointing a receiver of the goods mentioned, and in ordering the appellant to turn over possession of the goods in question to the receiver," and the order of the Circuit Court was reversed. (Schack v. McKee, 97 Ill. App. 460.) The opinion in that case is preceded by a statement of the facts as they appear in the original bill and in affidavits filed in support thereof.

The case having been remanded to the Circuit Court, appellee's counsel filed what is called a new "amended and supplemental bill," with additional affidavits in support thereof. Upon this bill the Circuit Court again appointed a receiver, and ordered that "the Chicago Title and Trust Company be, and it is hereby, appointed receiver herein of all the property and assets mentioned and described in said amended and supplemental bill of complaint, which are claimed by said defendant to have been acquired by him from Abraham Meyer on the 14th of November, 1900, with the usual powers of receivers in chancery in like cases, and that said defendant is hereby ordered and directed to forthwith surrender and deliver to said receiver so appointed, possession of all of said property and assets; that said receiver be, and he is hereby, authorized and directed to forthwith take possession of the same, and hold the same until the further order of the court in the premises."

The new bill sets up the appointment of appellee as trustee in bankruptcy of one Abraham Meyer; his indebtedness to creditors; that in contemplation of bankruptcy and with fraudulent intent to cheat his creditors said Meyer conveyed and delivered stocks of merchandise to appellant of which the latter fraudulently claims to be the owner; that said conveyance was for the purpose of covering up title to said goods for the use and benefit of Meyer, and was without consideration, in which fraud appellant participated; that appellant threatens to sell and dispose of the stock apparently for his own account, but really in secret trust for Meyer and in disregard of the rights of appellee as trustee in bankruptcy; that Meyer and appellant pretend the said alleged sale was for a consideration of $3,300, but that such

pretense is false and fictitious, such consideration inadequate and the transfer made with knowledge by appellant that Meyer was insolvent; that since the proceeding in bankruptcy against him began, Meyer has absconded or secreted himself so that service of process on him can not be had; that as appellee is informed and believes the stock is partially if not wholly unpaid for.

The bill avers "by way of supplement" that appellant is not engaged in any mercantile pursuit; is a man of little means; that appellee "is unable to ascertain" that appellant has any property or assets in excess of $400, and no means except two lots of land of that value, and "charges that" appellant would be unable to respond to any decree for the value of the property or to any judgment at law. The bill shows that by reason of the facts stated appellee fears that unless a receiver *pendente lite* be appointed to take possession of the property, appellee's rights as trustee in bankruptcy will be lost; that the property is of a character intended for fall and winter trade, and unless disposed of sooner than a final decree can be rendered, would greatly diminish in value, and that an injunction restraining appellant from selling or disposing thereof would be an inadequate remedy to appellee.

Affidavits are filed in support of the bill, which contain many averments tending to support the charges of fraud.

MORAN, MAYER & MEYER and McEWEN & WEISSENBACH, attorneys for appellant.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It will be seen from the preceding statement that the allegations in the so-called new bill are in all material respects those contained in the original bill, somewhat amplified and extended. Substantially appellee has obtained from the Circuit Court a new order, to the same effect and upon practically the same averments as upon the former

hearing, and seeks now nothing more nor less than a rehearing of the cause.    It was said in the former opinion of this court (Schack v. McKee, 97 Ill. App. 460) that the material allegations of the bill make out the "statement of a case for which the law affords a full and adequate remedy, either in replevin to recover the goods in specie, or trover for their value."    Conceding all that is claimed by appellee's counsel as to the "grossly fraudulent character of the transactions between appellant and Meyer," as the same are stated in the bill of complaint, it still remains true that appellee has a plain, adequate and complete remedy at law.

In the new matter "by way of supplement," assuming for the moment that it is proper supplemental matter, it is set up that appellee "is unable to ascertain" that appellant has any property, and appellee "charges that said defendant Jacob Schack is now and would be unable to respond to any decree which might be rendered in this cause for the value of the property."    But there is no positive averment of insolvency, and the verification merely states that "as to the matters so charged"—that is, concerning which appellee "is unable to ascertain"—appellee believes them to be true.    This charge of insolvency is sought to be supported by affidavits and is denied in counter affidavits by appellant and others.    There is no such averment or showing of insolvency as warrants a court of equity in appointing a receiver on that ground, and whether appellant be insolvent or not, there is a remedy at law, not only plain and adequate, but, as was said in the former opinion, "as complete at law as it could possibly be in equity."    It is not pretended, however, that the so-called supplemental matter includes anything which has arisen subsequent to the filing of the original bill.    In other words, it is not supplemental at all, but merely amendatory.    (Bauer Grocer Co. v. Zelle, 172 Ill. 407–411.)    The amendments contain no new matter showing more substantial grounds for the appointment of a receiver.    The case, as before stated, is substantially the same as that made by the original bill.

It would be enough, doubtless, to rest a reversal of the

order now appealed from upon the former opinion. But as that decision is challenged by counsel for appellee with apparent sincerity, we deem it proper to notice briefly some of the grounds upon which it is sought to show that the order appointing the receiver ought to be sustained.

It is said that the principle that equity will not interfere where complainant has a full, complete and adequate remedy at law has no application to a class of proceedings like the cause under consideration, where it is sought to set aside a fraudulent conveyance of personal property, the remedy in equity being concurrent; and that fraud is always a separate and distinct ground of equity jurisdiction, irrespective of the legal remedy. The question involved in this appeal is not whether the case stated in the bill is such as may warrant a court of equity in assuming jurisdiction to inquire into the alleged fraud and settle the controversy between the parties. This is simply an interlocutory appeal from an order appointing a receiver. The propriety of that order is the only question before us. Appellee's counsel have used time and space to show that a court of equity may have jurisdiction of a bill to set aside a fraudulent conveyance of personal property, even though a remedy at law does exist. No one in the present case, so far as we are advised, has disputed that proposition. There are many cases where the remedy is concurrent, and where equity, being flexible, can administer justice more fully than can be readily done under the rules of law. In the case at bar the relief sought by the appointment of the receiver can be had as fully, adequately and completely at law as in equity. In an action of replevin the goods may be recovered and the question of title tried as readily as in a court of equity and with the aid of a jury upon the question of fact. (County of Cook v. Davis, 143 Ill. 151.) The case, Greensfelder v. Corbett, 190 Ill. 565, apparently relied upon by appellee, was a bill in the nature of a creditor's bill, distinguished by its facts from the case at bar, and not involving any order such as that now under consideration. There are, doubtless, cases in which a trustee in bankruptcy may

maintain a bill in equity to uncover fraud and recover assets belonging to a bankrupt. But the appeal before us involves an order making a preliminary appointment of a receiver, and directing him to take property, before the hearing, out of the possession of one claiming to hold it by right of ownership, when, by the showing of appellee's bill, a full, complete and adequate remedy exists at law, and there is therefore no necessity for such order. The fraud relied upon is that appellant received the merchandise in question for an inadequate or a pretended consideration. If the appellant did not acquire the property in good faith, not only can the law court so ascertain in a replevin suit, but appellee can obtain immediate possession in such action. The interlocutory order appealed from is not like a temporary injunction, merely restraining the disposition of property until the question of title can be determined. It is an order turning over to a receiver personal property to which appellant claims title by right of purchase and payment, and of which he is in possession, without giving him any opportunity to establish his claim, whether he has a good title or not. The appointment of a receiver in such case should not be made unless it is apparent to the court that there is no other adequate remedy. A court of equity is not justified in arbitrarily taking the possession of property from one holding it under claim of valid title, merely because another disputes the holder's claim. (First National Bank, etc., v. Gage, 79 Ill. 207; Beach on Receivers, Sec. 5; Harn v. Quackenbush, Am. Bankruptcy Rep., Vol. 5, No. 5, 483.) The power to appoint a receiver and put him in possession of another's property is one of the most important prerogatives of equity, only to be exercised by the conscientious chancellor when it is clear there is no other adequate means of doing justice between the parties and preventing the accomplishment of a wrong. It is said by Mr. High, in his work on Receivers, 3d Ed., Sec. 10, that "as it is always a sufficient objection to the granting an injunction that the person aggrieved has a full and adequate remedy at law, so courts of equity will not lend their aid by the appointment of

Schack v. McKey.

receivers when the persons seeking the relief have ample redress by the usual course of proceedings at law, or when the law affords any other safe or expedient remedy.  *  * Nor does it necessarily follow because the remedy at law is attended with difficulty, that plaintiff may have relief in equity by a receiver." In the case at bar, if the property in controversy is taken under a replevin writ, there can be no danger of its being lost, and it is the presence of this element of danger which constitutes an important consideration to justify the interference by a receiver with the possession of property held under claim of right.

It is said, however, that no trustee in bankruptcy of an estate left without assets, can be expected to furnish a replevin bond, and it is seriously argued that this is a sufficient reason why equity should take this property summarily out of the hands of one claiming to be a rightful owner and place it in the hands of a receiver, to be disposed of by him as may be thought proper pending the determination of the question who is the rightful owner. It is needless to say that courts of equity are not constituted to abuse their powers. If it is proper to take the property in controversy out of appellant's hands in this summary way, giving him no security to which he can appeal in case his claim to rightful ownership should ultimately be sustained, it can with equal propriety be done in any case whatever where one desiring to obtain possession of another's personal property, chooses to file a bill charging fraud and attacking title. The trustee in bankruptcy is a representative of the bankrupt's creditors, and if they have faith in the justice of their claim, no reason is perceived why they should refuse to furnish for their representative the security the law requires of ordinary litigants. Counsel for appellant in their brief use the following language :

" Under such a bond, if the trustee had brought replevin, he would, in the event of an unsuccessful result of the suit, have been held accountable not alone for the full market value of the property, but also interest thereon from the time of its taking, damages for its wrongful tak-

ing and detention, attorney's fees for the defense of the suit, and all costs incurred. In the meantime the property replevied would have been sold at a sum undoubtedly less than its market value, and the proceeds distributed among the creditors of the bankrupt estate."

But what, meantime, is to be the consequence to the man whose property may be found to have been unlawfully taken away from him by a receiver? Is he to have no remedy when his property shall have been "sold at a sum undoubtedly less than its market value, and the proceeds distributed" beyond recovery among parties not entitled thereto, should such be the final conclusion? It may be that in the present case appellant is aiding the bankrupt in the commission of a fraud upon creditors. But the well known aphorism "hard cases make bad law," is but an expression of the wisdom of maintaining established rules of legal procedure instead of disregarding them to meet imaginary contingencies in particular cases. In the case at bar it may be true that appellant is insolvent, but appellee's counsel are unable to so affirm except upon information and belief, and the fact is denied absolutely in counter affidavits filed by appellant.

It is urged that the bill in this case was filed not only to set aside a fraudulent conveyance but to create a trust and to establish the relation of appellant to the property "as that of a trustee *ex maleficio*." It is averred that appellant holds the goods in secret trust for the bankrupt. It is enough to say that the allegation of the existence of such secret trust, even if it may properly be taken into consideration in determining whether equity should assume jurisdiction, does not aid in the least the order herein appealed from. It does not follow in case a court of equity assumes jurisdiction where there is concurrent jurisdiction at law, that it will be justified in arbitrarily taking possession and disposing of property claimed by a defendant as his own, before the latter has had a chance to be heard, where, as we have said, an action at law would have the same effect and secure the defendant against loss if he establishes his right to the property.

Appellee's counsel venture to tell us of their "surprise" and "bewilderment" at the views expressed in the former opinion now concurred in, to "trust that we are not addressing a hostile court," and to inform us that "at the beginning of the twentieth century it is appalling that these counsel should be subjected to this fatiguing labor to establish a well settled rule of equity law and procedure." There are limits to the language counsel can with propriety use in briefs, but we quote the above expressions, not for the purpose of making obviously appropriate comment, but merely to suggest that sound arguments and pertinent authorities are more potent weapons and take up no more room in a printed brief.   Referring to the former opinion herein, appellee's counsel presume to tell us that "the case is absolutely without precedent."   The unwisdom of rash and positive assertion may perhaps be illustrated by reference to such cases as the following:   County of Cook v. Davis, 143 Ill. 151–154; Victor Scale Co. v. Shurtleff, 81 Ill. 313; Richards v. L. S. & M. S. Ry. Co., 25 Ill. App. 344; Bigelow v. Andress, 31 Ill. 322, p. 335; Craft v. Dickens, 78 Ill. 131; Long v. Barker, 85 Ill. 431–434; Taylor v. Turner, 87 Ill. 296–302; Gore v. Kramer, 117 Ill. 176–182; Insurance Co. v. Bailey, 13 Wallace, 616–623; Grand Chute v. Winegar, 15 Wallace, 373–377; Pomeroy's Equity Jurisprudence, Vol. 1, Sec. 176 *et seq.; Idem.*, Vol. 2, Sec. 910, and cases before cited herein.

The order of the Circuit Court is reversed.